UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ASBESTOS CORPORATION LIMITED | 25-cv-9889 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.

On September 10, 2026, this Court entered a "bottom-line" Order affirming the Bankruptcy Court's ruling granting the motion of appellee Raymond Chabot, Inc., in its capacity as the foreign representative of debtor Asbestos Corporation Limited ("ACL"), to recognize a Canadian insolvency proceeding as a foreign proceeding under Chapter 15 of the Bankruptcy Code and to extend stay relief to certain non-debtor third parties. See ECF No. 51. This Opinion sets forth the reasons for that Order.

## I. Background

ACL is a Québec corporation that was incorporated under Canadian law in 1925. See ECF No. 29 ("App'x") Tab 1 ¶ 8. For sixty years, between 1925 and 1986, ACL operated open pit chrysotile mines in Québec for asbestos mining. See id. ¶ 15. During that time, ACL shipped asbestos mined in Québec worldwide, including to the United States.

ACL's asbestos mining operations ceased in 1986. See id. But ACL continues to operate its mines in Québec for the purpose of extracting minerals from tailings, a waste byproduct of asbestos mining. See id. ACL also continues to manage,

redevelop, and lease its warehouses and other properties in Québec. See id.

After ceasing its asbestos mining operations, ACL faced personal injury lawsuits in the United States arising from exposure to its asbestos-containing products. See id. ¶ 16. In 1998, ACL entered into an Interim Settlement Agreement ("ISA") with Certain London Market Insurers ("CLMI").[1] See id. ¶ 27. Under the ISA, which has been extended indefinitely, CLMI agreed to reimburse ACL for certain costs related to asbestos claims.[2] See id. Thousands of asbestos claims have been settled under the ISA and approximately 6,100 claims remain. See id. ¶ 28.

In 2023, settlement efforts with the remaining claimants stalled when a South Carolina court overseeing some of the asbestos litigation against ACL appointed a receiver, Peter Protopapas. See id. Following his appointment, the receiver accepted service on ACL's behalf in new asbestos actions, but

---

[1] The CLMI consist of Certain Underwriters at Lloyd's, London, The Scottish Lion Insurance Company Limited, Tenecom Limited (as successor to Winterthur Swiss Insurance Company, formerly known as Accident & Casualty Insurance Company of Winterthur, Switzerland, and to Yasuda Fire and Marine Insurance Company (UK) Limited and now known as Tenecom Limited), The Ocean Marine Insurance Company Limited (as successor to liabilities of Commercial Union Assurance Company Limited, The Edinburgh Assurance Company, The Indemnity Marine Assurance Company Limited, The Northern Assurance Company Limited, The Road Transport & General Insurance Company Limited, United Scottish Insurance Company Limited, and The Victoria Insurance Company Limited), and NRG Victory Reinsurance Limited, as successor to liabilities of New London Reinsurance Company Limited (collectively, "CLMI"). See App'x Tab 1 ¶ 27 n.6.

[2] General Dynamics Corporation, ACL's former parent company, is covered by the same policies. See App'x Tab 15 at 26 n.9.

ACL, while challenging the validity of the receivership, did not retain counsel in those cases. See id. ¶ 31. As a result, default judgments were entered against ACL and claimants brought actions against CLMI to enforce the judgments against ACL. See id. ¶¶ 31, 34.

On May 5, 2025, CLMI initiated insolvency proceedings for ACL in Canada under the Companies' Creditors Arrangement Act (the "CCAA proceeding"). See App'x Tab 1 Ex. 2. On May 6, the Canadian court appointed appellee Raymond Chabot, Inc. as ACL's monitor. In its derivative capacity as the foreign representative of ACL, Raymond Chabot, Inc. moved in the United States Bankruptcy Court for the Southern District of New York to recognize the CCAA proceeding as a "foreign proceeding" (either a foreign "main" proceeding or a foreign "nonmain" proceeding) under Chapter 15 of the Bankruptcy Code and to extend stay relief to CLMI, its third-party claims administrator, Resolute Management, Inc. ("Resolute"), and General Dynamics Corporation ("General Dynamics"). See App'x Tab 2. Appellant, a group of individuals with U.S.-based claims against ACL for exposure to asbestos-contaminated products (the "Asbestos Parties"), objected. See App'x Tab 8.

The Bankruptcy Court (Glenn, C.J.), by opinion and order entered October 30, 2025, granted appellee's motion. See App'x Tab 15; App'x Tab 16. The Bankruptcy Court recognized the CCAA

proceeding under 11 U.S.C. § 1517(a) after determining that the CCAA proceeding qualifies as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding. See App'x Tab 15 at 25-26. The Bankruptcy Court also extended the automatic stay available upon recognition to CLMI, Resolute, and General Dynamics under 11 U.S.C. § 1521(a). See id. at 26-29. The Asbestos Parties then filed the instant appeal.

## II. Legal Standard

The Court reviews a bankruptcy court's factual findings for clear error and its legal conclusions de novo. See In re Fairfield Sentry Ltd., 714 F.3d 127, 132 (2d Cir. 2013). "For a mixed question of law and fact, the standard of review — de novo or clear error - 'depends . . . on whether answering it entails primarily legal or factual work.'" In re Bernard L. Madoff Inv. Sec., LLC, 605 B.R. 570, 582 (S.D.N.Y. 2019) (quoting U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 583 U.S. 387, 396 (2018)).

The Court reviews a bankruptcy court's grant of discretionary relief under 11 U.S.C. § 1521(a) for abuse of discretion. See In re Treco, 240 F.3d 148, 154-55 (2d Cir. 2001); In re Atlas Shipping A/S, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009).

## III. Analysis

### A. Recognition of a Foreign Proceeding

Appellant first argues that the Bankruptcy Court erred by granting appellee's motion to recognize the CCAA proceeding. See ECF No. 28 ("Appellant Br.") at 23-41. Under § 1517(a):

> [A]n order recognizing a foreign proceeding shall be entered if - (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or a foreign nonmain proceeding within the meaning of [§] 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition [for recognition] meets the requirements of [§] 1515.

11 U.S.C. § 1517(a) (emphasis added). Appellant does not dispute that the second and third requirements of § 1517(a) are met. The only question is whether the CCAA proceeding is a qualifying "foreign proceeding," meaning either a foreign main proceeding or a foreign nonmain proceeding. See Appellant Br. at 23-24. The Bankruptcy Court's ruling that the CCAA proceeding is a qualifying foreign proceeding can be affirmed on either ground. See ECF No. 42 ("Appellee Br.") at 48 n.19.

Even assuming arguendo that the CCAA proceeding is not a foreign main proceeding, the alternative conclusion that it is a foreign nonmain proceeding is amply supported. The Bankruptcy Court did not clearly err in finding that ACL has an "establishment" in Canada.[3] 11 U.S.C. § 1502(5); see In re

---

[3] Appellant argues that the Bankruptcy Court erred by excluding from the recognition hearing the prior deposition testimony of Andre LaChance, ACL's corporate designee in a Washington state court wrongful death action, and two exhibits concerning Richard Dufour, ACL's counsel. See Appellant Br. at 40. The Bankruptcy Court correctly concluded that LaChance's testimony did not qualify as an opposing party statement under Rule 801(d)(2)(C) because LaChance was not "authorized to make a statement" about ACL's employees and

Pirogova, 612 B.R. 475, 483 (S.D.N.Y. 2020). ACL engages in activities affecting the local economy in Canada: ACL "operate[s] mines for purposes of extracting minerals from serpentinite, the waste material remaining after mining," App'x Tab 1 ¶ 15, and partners with several companies and governmental authorities to do so, see Recognition Hearing Transcript at 182:19-21, 221:9-13, In re Asbestos Corp. Ltd., No. 25-10934 (Bankr. S.D.N.Y. Oct. 16, 2025); In re Creative Fin. Ltd., 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016). There is nothing transitory about ACL's mining operations; although the nature of ACL's mining activities has changed, ACL has operated the mines for over one hundred years. See App'x Tab 1 ¶¶ 8, 15; 11 U.S.C. § 1502(2). The Court thus affirms the Bankruptcy Court's order granting appellee's motion to recognize the CCAA proceeding as a qualifying foreign proceeding.

**B. Extension of the Stay**

Appellant next argues that the Bankruptcy Court erred by granting appellee's motion to extend the stay of U.S. litigation to non-debtor third parties, namely CLMI, Resolute, and General

---

operations in 2024, a topic which fell outside the scope of noticed deposition topics. Fed. R. Evid. 801(d)(2)(C). Furthermore, any error in excluding LaChance's testimony did not affect appellant's substantial rights given the evidence documenting ACL's operations and employees as of the petition date. See App'x Tab 1 ¶¶ 13, 15. Nor did any error in excluding the Dufour exhibits affect appellant's substantial rights in light of the evidence establishing that ACL also operates mines and manages, redevelops, and leases properties. See id. ¶ 15.

Dynamics. See Appellant Br. at 41-48. In the main, appellant argues that extending the automatic stay fails to "sufficiently protect" appellant's interests because it results in "[un]just treatment" of asbestos claimants and "prejudice and inconvenience in the processing of [their] claims." In re Odebrecht Engenharia E Construção S.A., 669 B.R. 457, 474 (Bankr. S.D.N.Y. 2025) (internal quotation marks omitted); see 11 U.S.C. § 1522(a).

The Bankruptcy Court did not abuse its discretion in extending stay relief to CLMI, Resolute, and General Dynamics. First, as to the just treatment of claimants, Canadian law "provides . . . a comprehensive procedure for the orderly and equitable distribution of [ACL's] assets among all of its creditors." In re Treco, 240 F.3d at 158 (internal quotation marks omitted). Second, as to prejudice and inconvenience in the processing of claims in the foreign proceeding, the CCAA proceeding does not prejudice or inconvenience claimants because notice was provided to existing asbestos claimants to file proofs of claim, claimants had at least six months to file proofs of claim, and future asbestos claimants were not barred by the claims bar date. See In re OI S.A., 587 B.R. 253, 268 (Bankr. S.D.N.Y. 2018); see generally Foreign Representative's Sixth Status Report, In re Asbestos Corp. Ltd., No. 25-10934 (Bankr. S.D.N.Y. Jan. 12, 2026); Asbestos Claims Order, In re

Asbestos Corp. Ltd., No. 25-10934 (Bankr. S.D.N.Y. Jan. 12, 2026) ("Asbestos Claims Order"), Dkt. No. 155-3. The proof of claim form was also straightforward. See generally Asbestos Claims Order at 34-57.

Moreover, the Bankruptcy Court found that ACL's estate will be immediately and adversely impacted unless the stay is extended. Under the ISA, an insurer covers a portion of each claim brought against ACL, but if an insurer becomes insolvent and cannot pay its share, ACL must cover the insurer's portion of the claim. Thus, "[i]f claims were allowed to proceed against CLMI, Resolute, [and] General Dynamics, insurers would risk insolvency, ultimately lessening the pool of assets available for the remaining creditors to collect during the CCAA [p]roceeding." App'x Tab 15 at 26 (cleaned up); see ECF No. 44 at 13-14. Under these circumstances, the Court concludes that the Bankruptcy Court acted within its discretion in balancing ACL and its creditors' interests and affirms the Bankruptcy Court's order granting appellee's motion to extend stay relief. See In re OI S.A., 587 B.R. at 265.

**C. Public Policy Exception**

Appellant finally argues that recognizing the CCAA proceeding and extending stay relief violate the public policy exception in § 1506, under which a court may "refus[e] to take an action [that] would be manifestly contrary to the public

policy of the United States." 11 U.S.C. § 1506. This Court has previously held that this exception "should be narrowly interpreted, as the word 'manifestly' . . . restricts th[is] exception to the most fundamental policies of the United States." In re Ephedra Prods. Liab. Litig., 349 B.R. 333, 336 (S.D.N.Y. 2006) (cleaned up). So long as the foreign proceeding "affords claimants a fair and impartial proceeding," it need not afford claimants identical protections to those available in the United States. Id. at 336-37.

Appellant contends that recognizing the CCAA proceeding and extending stay relief violate U.S. policy because the CCAA proceeding does not replicate the asbestos-specific protections Congress enacted in 11 U.S.C. § 524(g). See ECF No. 46 at 22. But even assuming § 524(g) expresses a "fundamental polic[y]" about how asbestos claims must be dealt with in bankruptcy, In re Ephedra Prods. Liab. Litig., 349 B.R. at 336, the CCAA proceeding need not replicate § 524(g) to be "fair and impartial," see id. ("We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." (internal quotation marks omitted)). Appellant has not established that the CCAA proceeding does not afford claimants a fair and impartial proceeding. Moreover, extending a temporary stay is not manifestly contrary to public policy. See Collins v. Oilsands Quest Inc., 484 B.R. 593, 597

(S.D.N.Y. 2012). Neither recognition nor stay relief is denied pursuant to § 1506.

## IV. Conclusion

For the foregoing reasons, the Court reconfirms its September 10, 2026 "bottom-line" Order. See ECF No. 51. The Clerk of Court is respectfully directed to enter final judgment and to close the case.

New York, NY
October 23, 2026

JED S. RAKOFF, U.S.D.J.